# Exhibit A

<pre>
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3   RED LABEL MUSIC PUBLISHING,      )  Docket No. 18 C 07252
     INC., et al.,                    )
 4                                     )
                        Plaintiffs,   )  Chicago, Illinois
 5                                     )  February 19, 2019
                  v.                   )  9:20 a.m.
 6                                     )
     CHILA PRODUCTIONS, et al.,        )
 7                                     )
                        Defendants.   )
 8

 9                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE VIRGINIA M. KENDALL
10

11   APPEARANCES:

12   For the Plaintiffs:       MINKOW & BERGMAN LTD by
                               MR. GREGG IAN MINKOW
13                             123 North Wacker Drive, Suite 250
                               Chicago, Illinois  60606
14
                               MR. SAMUEL GLENN LEVIN
15                             123 North Wacker Drive, Suite 250
                               Chicago, Illinois  60606
16
     For Defendants            VEDDER PRICE PC by
17   Lenkov; Prestin;          MR. BLAINE C. KIMREY
     '85 Bears Documentary,    222 North LaSalle Street, Suite 2500
18   LLC; Amazon; IMDb.com;    Chicago, Illinois  60601
     Apple, Fathom,
19   Microsoft:

20

21
     Court Reporter:           GAYLE A. McGUIGAN, CSR, RMR, CRR
22                             Federal Official Court Reporter
                               219 South Dearborn, Room 2318-A
23                             Chicago, Illinois 60604
                               (312) 435-6047
24                             Gayle_McGuigan@ilnd.uscourts.gov

25
</pre>

```
 1   APPEARANCES:   (Continued)

 2

 3

 4   For Defendant WTTW:       BRYCE DOWNEY & LENKOV LLC by
                               MR. BRIAN ALLEN ROSENBLATT
 5                             200 North LaSalle Street, Suite 2700
                               Chicago, Illinois  60601
 6
     For Defendant PBS:        LAW OFFICES OF WILLIAM B. KOHN by
 7                             MR. WILLIAM BRISKIN KOHN
                               29 East Madison Street, Suite 1000
 8                             Chicago, Illinois  60602

 9   For Defendant United:     WINSTON & STRAWN LLP by
                               MR. THOMAS GERALD WEBER
10                             35 West Wacker Drive
                               Chicago, Illinois  60601
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1            (Proceedings heard in open court:)
2                THE CLERK:  18 C 7252, Red Label Music versus Chila
3     Productions.
4                THE COURT:  Good morning.
5            (Counsel conferring.)
6                THE COURT:  It helps when I know which side you're on.
7                Good morning.  Who wants to go first?
8                MR. MINKOW:  I'll go first, your Honor.
9                Gregg Minkow, along with Sam Levin, for the plaintiffs
10    Red Label and Renaissance.
11               THE COURT:  Good morning.
12               MR. LEVIN:  Good morning.
13               MR. ROSENBLATT:  Good morning, your Honor.  Brian
14    Rosenblatt on behalf of defendant WTTW.
15               THE COURT:  Good morning.
16               MR. KIMREY:  Good morning, your Honor.  Blaine Kimrey.
17    Get ready, this is a long list.  '85 Bears Documentary, LLC.
18    Rich Lenkov.  Scott Prestin.  Amazon.  Apple.  Microsoft.
19    Fathom.  And IMDb.com.
20               THE COURT:  Got it.  Good morning.
21               MR. KIMREY:  And only some of them have responded so
22    far.
23               THE COURT:  Okay.  Did you file an appearance for all
24    of them?
25               MR. KIMREY:  Your Honor, we I believe have.  I think
```

1   we filed corporate disclosure statements for all of them, and

2   that would have required the filing of entries of appearance on

3   behalf of all of them.

4           THE COURT:  Just making sure you're on with everyone.

5           Look at this.  Good morning.

6           MR. WEBER:  Good morning, your Honor.  Thomas Weber on

7   behalf of United Airlines.

8           THE COURT:  Nice to see you, Mr. Weber.

9   Congratulations on the birth of your new baby.

10          MR. WEBER:  Thank you.  Four weeks today.

11          THE COURT:  Four weeks today.

12          This was a former law clerk of mine, so I found out

13  about a new birth coming along.  I have chambers babies, you

14  know.

15          Is this the first time that you've appeared in front

16  of me, though, right?

17          MR. WEBER:  Yes.  Yes, your Honor.

18          THE COURT:  Nice to see you again.

19          MR. WEBER:  Nice to see you, too.

20          THE COURT:  Good morning.

21          MR. KOHN:  Good morning, your Honor.  William Kohn,

22  K-O-H-N, local counsel for PBS defendant.

23          THE COURT:  Okay.  Good morning.

24          All right.  So who wants --

25          MR. MINKOW:  I wanted to, before we get started --

1          THE COURT:  Sure.

2          MR. MINKOW:  -- I told counsel before, and I wanted to

3    make an apology to them and to you about something because in

4    the 15 filings on February 4, I missed something which I

5    misstate in my brief because of it, and I want to make you

6    aware of it.

7          THE COURT:  Okay.

8          MR. MINKOW:  The WTTW and Documentary, LLC defendants

9    have, in fact, filed an answer.  I was focused on their

10   12(c) motion.

11         And, again, I'm not giving -- I'm giving a reason, but

12   not an excuse.

13         In the flurry of things on that day, I simply missed

14   the fact that they had, in fact, filed answers.  So my

15   apologies to them.

16         I don't think it changes the point of the motion we

17   noticed up for today, but it's not fair to them to misstate

18   what they did and didn't do.  And I apologize to them and the

19   Court.

20         THE COURT:  Okay.  Thank you.

21         So nothing better than having to file a motion to

22   dismiss and an answer at the same time, right, gentlemen?

23   Nothing like that new rule, right?  You know, they'll send out

24   surveys to the bar asking you about whether you think that's a

25   good idea or not --

1          (Laughter.)

2          THE COURT:  -- so I have a feeling that most people

3    don't think it is a very helpful one.

4          But that's for the litigants, not for the Court.

5          All right.  So let's start with your motion, though.

6          Let me hear from you about what you expect me to do.

7    And, of course, I will give a written opportunity to all of the

8    other side, if you need it.

9          Go ahead.

10          MR. MINKOW:  Your Honor, the 12(c) motion basically is

11   seeking to apply a bright-line test that says if you have eight

12   seconds from the chorus in terms of audio -- remember, the

13   context, Judge, the Super Bowl shuffle -- that if you have

14   eight seconds of audio from the chorus and about a minute of

15   video chopped up into several segments, that as a matter of law

16   there's a bright-line test that that cannot be injurious to the

17   product or to its ability to sell the Super Bowl Shuffle or

18   parts of the Super Bowl Shuffle for creation of derivative

19   works and that, therefore, the infringement action should be

20   dismissed on grounds of fair use.

21          Our position is there's no way to really -- first of

22   all, they've made assumptions about how important or

23   unimportant that eight seconds are.  We claim it's the hook of

24   the whole thing.  They disagree.

25          And we're saying that they've made assumptions about

1    what can cause harm in our client's marketplace as a substitute

2    for actually presenting evidence.

3          There is a *Brownmark* case that the defendants cited

4    where a plaintiff in our position took the defendants at their

5    word about the characterization of their motion, said, well,

6    this is not a motion for summary judgment.  Therefore, although

7    we can list what our evidence would show, we don't have to

8    actually introduce the evidence, and the motion should be

9    denied, the motion to dismiss our case.  And lo and behold,

10   their case was dismissed.  They never got to present their

11   evidence.  And they never forced the defendants in that case to

12   present their evidence that the most important factor in fair

13   use, whether or not there's market harm, is in the favor of the

14   defendants.

15         So we're trying -- the purpose of our motion now is to

16   say they've made assumptions.  Those assumptions are not

17   accurate from our standpoint.  That's why we attached the

18   declaration of our client.  They -- the -- what would actually

19   show the harm is a combination of evidence on reach and

20   frequency of the copying work.  And without the evidence that's

21   only in the possession of the defendants, we aren't even able

22   to present our own contrary evidence in a motion for summary

23   judgment or in response to a motion for summary judgment.

24         So what I'm asking you to do, your Honor -- I

25   apologize, that was a long way of getting to your question --

1    is we're asking you to have this treated as a straight motion

2    for summary judgment for which they can't make assumptions

3    about how our client makes money; they can't make assumptions

4    about what harms our client in the market; they can't make

5    assumptions about how important the most recognizable eight

6    seconds of the song is or is not.  That they, instead, present

7    evidence in the way that they're required to for a summary

8    judgment motion; that the MIDP and other discovery move

9    forward; that we be able to use the benefit of that to respond

10   to whatever evidence they provide.  But we need that reach and

11   frequency evidence in order to go to an expert and say, What

12   effect do you believe this had on our marketplace?

13          So we're asking, let us do some discovery.  Treat it

14   like a motion for summary judgment.  And to the extent that

15   there's something in there that they said that we should have

16   pled the way that we're harmed more specifically, we may not

17   agree with them, but that's the kind of thing that's easily

18   fixed and we're prepared to fix by supplementing our pleadings,

19   so if we need to do that, we can do that.

20          And even though, theoretically, a 12(b)(6) motion has

21   to be brought before a pleading is filed, you know, that's

22   there I think primarily to protect the plaintiff, and we're

23   willing to waive that.

24          If you believe we need to be more specific in our

25   pleading, we'd rather just do that now, do it at the outset.

1    And then if they believe that we haven't been harmed, let them

2    prove it instead of assuming it.

3              THE COURT:  Where is the -- what's the status of this

4    briefing?

5              I can't open my computer again.  It's frozen.

6              MR. KIMREY:  Your Honor, may I address that?

7              THE COURT:  Sure.

8              MR. KIMREY:  Okay.  So I'm going to set aside

9    responding to the substantive argument that was made --

10             THE COURT:  Sure.

11             MR. KIMREY:  -- because I think this is procedurally

12   confusing.

13             THE COURT:  Okay.

14             MR. KIMREY:  I'll explain what's going up.

15             So we -- and when I say "we" right now, I mean '85

16   Bears Documentary LLC, Rich Lenkov, and Scott Prestin, who I'll

17   refer to as the primary defendants -- those three defendants,

18   with me as counsel, moved under Rule 12(c) from -- for a

19   judgment on the pleadings on 2/4.  And in the alternative, we

20   said if your Honor thinks this is more appropriately a 56

21   motion, you can convert it.  But we don't believe it is.  It's

22   a Rule 12(c) motion.

23             THE COURT:  Right.

24             MR. KIMREY:  So today the opposition, the plaintiffs,

25   were required to file a response.  Instead, what they did was

1    they filed this separate motion.

2            Now, what Mr. Minkow just did was argue against my

3    motion substantively, which is what his motion does.  So his

4    motion isn't really a motion.  It's a response to our motion.

5            And in his motion, what he says is -- and these are

6    confusing because they're inconsistent -- he says deem my

7    motion, the primary defendant's motion, to be a 12(b)(6)

8    motion, which doesn't make any sense because you can't move

9    under Rule 12(b) in the Seventh Circuit on fair use.  We had to

10    move under 12(c) for judgment on the pleadings.

11            Alternatively, he says deem our motion to be a 56,

12    which is confusing because he's saying on the one hand, make it

13    a (b)(6), on the other hand, make it a 56.

14            We, as the master of our pleading, styled it correctly

15    as a 12(c).  You then, your Honor, struck the notice date

16    efficiently and set a briefing schedule.

17            So what should have happened is the plaintiff should

18    have filed a response to our motion today, and we would have

19    then filed a reply on the date that you set on 2/26.  And we

20    would have been arguing the merits of that on the hearing date

21    that you set, which is 3/11.

22            So what we're asking your Honor to do is convert the

23    motion that the plaintiffs just filed, which really is a

24    response to our motion, into a response, and then we'll proceed

25    with the reply.

1          As to substance -- oh, and, by the way, as to all the

2    other defendants, including your former clerk's client or

3    client United, they all have responsive pleadings that are out

4    in the future.  So my other clients have responsive pleadings

5    due on 3/6.  United's I think is due on 3/11.

6          MR. WEBER:  Eleven, yeah.

7          MR. KIMREY:  So they're not even at issue yet.  So the

8    only ones who are arguing substance right now at this point are

9    Mr. Lenkov, Mr. Prestin, and '85 Bears Documentary LLC.

10         As to substance, we're not asking you to assume

11   anything, your Honor.  We're asking you to just look at the

12   documentary and look --

13         THE COURT:  Believe it or not, I watched the

14   documentary on an airplane on my way home from a business trip,

15   and there it was.  So I thought, oh, well, this is good, I'll

16   do some work and I'll watch the documentary.  So I've already

17   seen it.

18         MR. KIMREY:  Yeah, so if you look at the documentary

19   and you look at the Super Bowl Shuffle video, with which you

20   may be familiar because most people in Chicago --

21         THE COURT:  Are.

22         MR. KIMREY:  -- are who were around in 1985 --

23         THE COURT:  I was really young.

24    (Laughter.)

25         MR. KIMREY:  Yes.  Me, too.

 1          MR. MINKOW:  I was not.

 2      (Laughter.)

 3          MR. KIMREY:  Anyway, we provided that to your Honor.

 4  And you can simply look at those two things and decide as a

 5  matter of law that fair use applies.

 6          Now, you're obviously not going to do that here today

 7  because you haven't had full briefing on the issue.

 8          This motion that was filed was completely

 9  inappropriate.  It's internally inconsistent.  It says we

10  didn't file an answer, which we did, as did WTTW.  It asked the

11  Court to do things -- I -- this motion that they filed isn't

12  even a thing under the Federal Rules of Civil Procedure.  So it

13  doesn't invoke any rules.  It could be construed as a motion

14  for extension, possibly.  But under your local practices, they

15  were required to reach out to us to talk to us about whether we

16  would consent to an extension, and they didn't do so.

17          The filing of this motion was a total surprise to us.

18  There was no meet-and-confer with us about it.

19          So what your Honor should do is convert it into a

20  response, which it is -- and you can tell by Mr. Minkow's

21  argument, he's responding to our arguments -- and not set a

22  briefing schedule on this motion and allow us to proceed with

23  the briefing schedule that you already entered on our motion,

24  which means that we would be filing a reply which will address

25  those arguments on 2/26.

1              THE COURT:  Go ahead.

2              MR. MINKOW:  Well, first of all, I think that,

3      unfortunately, Mr. Kimrey has made it complicated in a way that

4      it was not.

5              We were not asking for inconsistent remedies.  We

6      identified a specific part of their 12(c) motion that was

7      saying we didn't adequately plead the way in which we had been

8      injured.  We said that is the stuff of a 12(b)(6).  We said the

9      rest of their motion, is, in fact, making assumptions about how

10     we are hurt and how we are not.

11             So, for example, we cite things where they say:  The

12     documentary cannot reasonably be viewed as a market replacement

13     for the Super Bowl Shuffle lyrics or sound recording.

14             Now, that's a statement of fact.  That's not a --

15     that's a statement of fact unsupported by evidence, which is

16     why we said this is not a 12(c) motion.  This is not based on

17     anything we admitted in a pleading or that can be found in the

18     documents that were referenced in the pleading.  This is

19     something that makes a statement of fact about how the market

20     harms us or doesn't.

21             They say also -- and this is straight from their

22     motion -- "No consumer or licensee could listen to or use four

23     seconds of introductory percussion and four seconds of words as

24     a substitute for the full five-minute-plus song."

25             Well, again, that is a statement of fact on their part

1    for which they have not provided any evidence.

2          Now, he says that there's no legal basis for us to do

3    what we did by bringing this motion, which I don't think

4    anybody claims we didn't do it in a timely fashion.  We filed

5    this slightly after -- I think we filed this eight days after

6    they filed their motion or eight days after it was -- I think

7    it was eight days after the filing or thereabout.

8          We did exactly what the Seventh Circuit said you

9    should do in the *Brownmark* case.  We did exactly what the

10   plaintiff there did not do so they didn't get caught in the

11   difficult situation of responding to a 12(c) motion and saying

12   they say that this is something that's factually correct, we

13   say we were hurt in the market, but because they have not given

14   us discovery, because we do not have the information that a

15   market analyst would need to show the harm we suffered, we

16   can't present evidence.  So when they say that they brought

17   their motion as a Rule 56 motion in the alternative, there's

18   nothing about it that's Rule 56.  There's nothing about it the

19   way they did it that provides any kind of evidence for us to

20   respond to or that -- or that gives us the information that we

21   could show that you analyze that differently and the result is

22   different.

23          So what were we to do?

24          And, by the way, this is not a complete response to a

25   12(c) motion.  If we were responding to the 12(c) motion, we

1    would have addressed a number of things that we didn't.  We

2    felt we had to give you some background as to what they are

3    doing and why we think we need facts, why we think we need

4    discovery.  And that's what we've asked you to do.

5              And the other thing is that we did mention that

6    they've gone ahead and publicly filed now a copy of the Super

7    Bowl Shuffle by claiming it was already in the public domain

8    because the latest YouTube posting of it and latest Vimeo.com

9    posting of it popped up, and we provided you with the take-down

10   notices and responses to the take-down notices, and we've done

11   that whenever we've become aware of it.  So -- so we also would

12   like you to put under seal the property that we've -- that

13   they've -- our property that they've now put in its entirety in

14   the public domain for anybody who wants to come here and ask

15   the Clerk's Office to make a copy.

16             But the real point we're making here is, no, this is

17   not a substitute for responding to their 12(c) motion.

18             And I do think we did exactly as *Brownmark* told us we

19   need to do if we don't want to lose our day in court.

20             And maybe there's -- maybe there is a rule provision

21   that would apply or maybe there's no rule provision that

22   wouldn't apply, but the Court has the ability to control its

23   own docket and to make sure that the substance of a motion is

24   what's being addressed, and that if the substance of a motion

25   is a Rule 56, that the parties are addressing it in that

1    fashion.  And that's exactly what *Brownmark* said.

2            THE COURT:  Okay.  I don't need it.  I don't need you

3    to sur-reply.

4            So you're really not as far apart as you think you are

5    because the rule that he's moved under, the 12(c) rule,

6    provides that I review it, and then I make a determination as

7    to whether or not it's appropriate for 12(c) ruling.  And if I

8    believe it is and I need the more information based upon fact

9    disputes, then I open it up and I say we're going to do

10   discovery on this.  And that's what is my review process of a

11   12(c) motion converting it to a Rule 56.  So no one is going

12   to -- this Court isn't going to do a Rule 56 review without --

13   if I believe there's fact disputes.  That's going to be

14   something that I would certainly be reversed on on that

15   upstairs.  So you don't have to worry about me not knowing what

16   vehicle it is.

17           Just for logistic sake in the future, generally, if

18   you think that the motion was brought improperly, you can do it

19   two ways.

20           You can move to strike it as an improper motion, but

21   it's probably not an improper motion since it is challenging

22   the unfair use, which under -- I believe you're right on the

23   Seventh Circuit law, you're supposed to be moving under 12(c),

24   so you could have moved to strike it.  Or you just respond to

25   it saying here's our response, and we shouldn't be deciding

1    this at this time, it's too early, we need to do discovery.

2            So, really, you're not that far apart in the rules.

3            So in order to clean up my docket, which I do have the

4    ability to do, I'm going to dismiss your motion as moot because

5    we're going to give you a chance to respond to the 12(c) motion

6    now.

7            I'll give you another week to do that.  Is that fine?

8            MR. MINKOW:  May I take ten days?  My son is getting

9    married on the weekend.

10           THE COURT:  Oh, my goodness.  Congratulations.

11           MR. MINKOW:  Thank you.

12           THE COURT:  Let's see.  Today is the, what, 19th.  And

13   so 10 days -- do you want to go out to, like, next Friday?

14   Would that be good?

15           MR. MINKOW:  That would be fine.  Thanks, your Honor.

16           THE COURT:  All right.  March 1st.  Because then they

17   leave and then, you know, you'll be able to do work.  You'll

18   just be tired.

19           All right.  March 1st.

20           And then do you want a week or two to reply,

21   gentlemen?

22           MR. KIMREY:  Two weeks, please, your Honor.

23           THE COURT:  All right.  To the 15th.

24           MR. ROSENBLATT:  Your Honor, I'm sorry, I'm going to

25   be out of town at a conference, an entertainment law

1    conference, from the 13th through the 17th.  If we can ask for

2    a little bit after that, just so my time doesn't get cut short.

3             THE COURT:  Okay.  So how about the 20th?

4             MR. ROSENBLATT:  Thank you very much.

5             THE COURT:  Does that work?

6             MR. KIMREY:  Fine with us, your Honor.

7             THE COURT:  Okay.  So the 20th for a reply.

8             All right.  So then what I'll do is I'll see you again

9    in May, on May 22nd -- if I'm here.  I've got a bunch of

10   conferences then.

11            THE CLERK:  May 23rd, you're here.

12            THE COURT:  May 23rd at 9:00, at 9:00 in the morning.

13            So the way to respond to it is both procedurally, and,

14   if you can, if you don't believe that you have the facts, then

15   you say these are the reasons that -- just like you mentioned

16   to me today.  That's in your response.

17            And then they can challenge whether or not they can --

18   I can make the ruling without what you are saying I need to

19   make the ruling on.

20            So you're really kind of on the same page as far as

21   what you're arguing.

22            MR. KIMREY:  Your Honor, there are two hearings set

23   between now and May --

24            THE COURT:  So the March 11th one is definitely

25   stricken.

1          What was the other one?

2          MR. KIMREY:  There's another one that you set in

3     April --

4          THE COURT:  Okay.

5          MR. KIMREY:  -- so I suggest that both those be --

6          THE COURT:  We'll strike those, and we'll move

7     forward.

8          And so as far as -- do you have any objection to the

9     filing of this video under seal?

10         MR. KIMREY:  Just to clarify the record.  You can't

11    watch the video on Pacer.  There's a slip sheet in our filing,

12    and we gave a copy to the Court.  And I don't even know if you

13    can go to the terminal and watch the video, so I don't think

14    the video is in the public record.

15         We have no issue either way.  I mean, it's fine, as

16    long as your Honor has a copy.  And it sounds to me that

17    they're acknowledging that it is the proper copy.

18         THE COURT:  Okay.

19         MR. MINKOW:  Well, I haven't -- I haven't reviewed it,

20    but let's make the assumption that they -- that they -- that

21    they deposited the correct document --

22         THE COURT:  And this is the original Super Bowl

23    Shuffle, not the documentary.

24         MR. KIMREY:  Right.  So we gave you both.

25         THE COURT:  Okay.

1           MR. KIMREY:  We gave you a copy of the documentary,

2    even though you've already seen it --

3           THE COURT:  I'll watch it again.

4           MR. KIMREY:  -- and we gave you a copy of the Super

5    Bowl Shuffle video.

6           THE COURT:  Okay.  All right.

7           So, Lynn, where do those do?  Do they go to the --

8    they probably are in the safe or something on 20.  I don't

9    remember get -- you didn't give them to us courtesy, you filed

10   them on the record --

11          MR. KIMREY:  Jonathon Reinisch in my office sent a

12   letter and a runner over --

13          THE COURT:  Oh.

14          MR. KIMREY:  -- and delivered it, I think, to

15   chambers.

16          THE COURT:  Oh, okay.  So maybe in the back.

17          MR. MINKOW:  Did you also give -- I think you may have

18   given a CD to me as well.  Did you --

19          MR. KIMREY:  Yeah, we shared copies with all --

20          THE COURT:  Okay.

21          MR. KIMREY:  -- parties.

22          THE COURT:  Probably in the back then.

23          Okay.  I'm going to put it under seal, just in case

24   there's any concern about it.  Okay?

25          THE CLERK:  Yes.

1          THE COURT:  That's the safest thing to do when we're

2   dealing with intellectual property for now.  Okay?

3          MR. MINKOW:  Is there anything for us to do then with

4   that?  Or does that --

5          THE COURT:  No, I'll just make sure that it gets under

6   seal.  I'll make a note that it's an oral motion.  Okay?

7          Anything else?  Yes, sir?

8          MR. LEVIN:  Yes, your Honor.

9          What airlines were you on?

10          THE COURT:  American.

11          MR. LEVIN:  Okay.  Thank you.

12          THE COURT:  Yes, American.  It was American Airlines.

13   So in the little, you know, video display.  I think I was

14   probably using my iPad, you know, where you can just like log

15   in to their little internet.

16          MR. LEVIN:  This isn't a deposition.

17          THE COURT:  I know, I know.

18      (Laughter.)

19          MR. KIMREY:  Just as a witness, your Honor.

20          THE COURT:  Well, you know, I do -- I do fly other

21   airlines, but, you know, they get you so stuck with your miles

22   on one, so the odds of it being American are greater than any

23   other.

24      (Laughter.)

25          MR. WEBER:  Your Honor, just a final comment, so the

1   Court understands the parties at issue.  United has not filed a
2   motion --
3            THE COURT:  Right.
4            MR. WEBER:  -- to join yet.  We have communicated our
5   intent to do so --
6            THE COURT:  Okay.
7            MR. WEBER:  -- to the plaintiffs' counsel.  And we
8   intend shortly to file a very short motion to join.  So we,
9   United Airlines, is at issue on this pending motion.
10            THE COURT:  Okay.  I'd appreciate that because -- and
11  since I spread it out with enough time, it should give you
12  enough time to be in that same briefing schedule.
13            MR. WEBER:  Understood.
14            MR. KOHN:  Your Honor, thank you.  On behalf of PBS, I
15  would just like to clarify that PBS has filed a separate
16  12(b)(6) motion to dismiss.
17            We're not involved at all in the broadcast or sale or
18  distribution or anything of this program, so I just want to
19  make sure that our current briefing schedule is not altered by
20  these 12(c) proceedings --
21            MR. MINKOW:  We -- I'm sorry, go ahead.
22            MR. KOHN:  And just one more point.
23            I don't know if your Honor would plan to hold argument
24  on the 12(b)(6) motion; but in I think your original briefing
25  order, you set one of those March or April dates as a hearing

1    date after the briefing on PBS's 12(b)(6) motion.  So you can

2    speak to that.

3             THE COURT:  Yes, so if people ask me for oral

4    argument, I am happy to give it, so -- if you think it's

5    helpful.  That was a status hearing for just keeping you on

6    schedule.

7             So you filed your motion -- if you haven't had

8    anything to do with it, what is your liability in this?

9             MR. KOHN:  Oh, we think it's absolutely none.

10            THE COURT:  Okay.

11            MR. KOHN:  We think Mr. Minkow will probably agree

12   that we were not at all involved in this because the nature of

13   his original pleading was very hypothetical, but I haven't -- I

14   don't know if you've spoken to my lead counsel --

15            MR. MINKOW:  What happened is I -- I actually left --

16   I apologize for interrupting.  I did leave a message for his

17   lead counsel.

18            Your Honor, we would be wanting to do one of two

19   things.

20            We would want to be doing either, instead of

21   responding to the motion, it's a 12(b)(6), we would either want

22   to use our opportunity to replead, or we have offered to

23   discuss dropping them from the case.  And, yes --

24            THE COURT:  Well, then maybe we should keep the

25   March 11 date for you.

1          MR. KOHN:  Was it the March or the April date after

2     our --

3          THE COURT:  March 11.

4          MR. MINKOW:  I'm not sure.  But the point is we have a

5     brief that's due in two days.  But, candidly, instead of

6     briefing it, your Honor, our preference would be to use our

7     right -- and I think it's an automatic right -- to go ahead and

8     just amend and not have further briefing on it, or we may be

9     able to dismiss them from the suit voluntarily if we can talk

10    about that.

11         THE COURT:  Okay.  Go ahead.

12         MR. KIMREY:  They don't have an automatic right to

13    amend because they already amended once, so they have to get

14    leave to amend.

15         Number two, there are a bunch of other defendants who

16    haven't responded yet, and there may be -- one or more of my

17    clients may bring a motion similar to PBS's, which would be a

18    (b)(6), which they still have the right to do.

19         What I suggest, your Honor, is that all of these

20    briefs be set for hearing on the date you've already set for

21    May 23rd so that we can come in and knock out PBS's issue.  We

22    can knock out whoever else it may be --

23         THE COURT:  But May 23rd with what?  With fully

24    briefed motions from them?

25         MR. KIMREY:  Yes.

1          THE COURT:  You mean for oral argument.

2          MR. KIMREY:  Yeah.  So, in other words, we could stick

3     with the current schedule that PBS has, if that's okay with

4     PBS, but we're going to need -- I can go ahead and set that

5     now.  We're going to need a similar briefing schedule for

6     IMDb.com.

7          IMDb.com, like PBS, didn't do anything.  IMDb.com

8     actually doesn't -- didn't stream the movie at all, so it

9     actually didn't engage in the allegations that are asserted

10    against it.  So IMDb.com has an intent, unless it's dropped

11    voluntarily, to bring a 12(b)(6) motion as well.

12         And those arguments are going to be, you know, failure

13    to state a claim based on the face of the pleadings, very

14    similar to PBS.

15         So rather than coming back in on that, maybe we can

16    deal with -- I think that all of my other clients who haven't

17    responded yet are going to operate similar to WTTW and United

18    and join in the motion for judgment on the pleadings, other

19    than IMDb.com, which is going to behave similarly to PBS.

20         So if you want to go ahead and set -- IMDb.com's

21    responsive pleading is not due until 3/6, so we need to set a

22    briefing schedule on it and in advance so that it's briefed

23    before we have the hearing on the 23rd.  Maybe you can keep

24    your current briefing schedule, but roll to the same hearing

25    date, because we're going to be saying many of the same

1  thing -- you can go first, too.

2           MR. MINKOW:  What is the --

3           THE COURT:  Hold on, hold on.  Don't interrupt.

4           MR. KOHN:  I'm just going to throw in another

5  scheduling possible wrinkle from PBS.

6           Mr. Minkow is raising the possibility of reaching out

7  to my lead counsel who is out of the country, so that would

8  make it difficult to accomplish anything in the two days before

9  your current brief is due.  So I don't know if the Court wants

10  to set another status on that to see if he's agreed to let PBS

11  out --

12          THE COURT:  Which is why I said the March 11 date I

13  will keep for those entities that may be dismissed out that

14  have filed a 12(b)(6) like PBS and IMDb.com.  Okay?

15          And then you can come in and you can tell me what the

16  status is, or you can file before then and I won't have to see

17  you again --

18          MR. MINKOW:  I would take it from what you said then

19  that we're relieved from this Thursday's deadline on the

20  response to their motion, and we'll see if we can just get them

21  dismissed out.

22          THE COURT:  And then if not, when I see you on the

23  11th, I'll get you to respond.

24          MR. MINKOW:  Okay.

25          THE COURT:  Okay?

1    MR. KIMREY:  For the other defendants I represent who

2    have not responded yet, they all will be at issue by 3/6, which

3    is their current deadlines --

4         THE COURT:  Right.

5         MR. KIMREY:  -- so as of 3/11, we'll be able to talk

6    about whatever they've done.

7         THE COURT:  Okay.  Perfect.  All right.  I'll see you

8    all then.  Okay?  Thanks very much.

9         ALL PRESENT:  Thank you.

10   (Proceedings concluded at 9:49 a.m.)

11                    C E R T I F I C A T E

12   I certify that the foregoing is a correct transcript of the

13   record of proceedings in the above-entitled matter.

14

15

     */s/ GAYLE A. McGUIGAN*              *February 26, 2019*
16   Gayle A. McGuigan, CSR, RMR, CRR              Date
     Official Court Reporter
17

18

19

20

21

22

23

24

25